FILED

JUL 1 0 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

KARIN L. CONTRERAS,
  also known as Karin L. Contreras Ortiz,

Defendant.

CRIMINAL CASE NO. 25-181-2-BAH

### STATEMENT OF OFFENSE

The United States of America, by its attorney, the United States Attorney for the District of Columbia respectfully submits the following Statement of Offense in the above-captioned case.

The following proffer of the government's evidence is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United States nor, to the extent it makes representations concerning anything the defendant said, is it a recitation of all that the defendant said.

The parties stipulate to the following facts.

### BACKGROUND

1.      ULISES E. CONTRERAS, also known as Ulises E. Contreras Ortiz, resided in the District of Columbia and Maryland.

2.      KARIN L. CONTRERAS, also known as Karin L. Contreras Ortiz, resided in the District of Columbia.

3.      ULISES CONTRERAS and KARIN CONTRERAS are siblings.

4.      ESDRA N. CASTILLO, also known as Esdra N. Castillo Felipe, resided in Maryland or the District of Columbia. ESDRA CASTILLO is KARIN CONTRERAS' estranged spouse.

5.     MANUEL DE LA CRUZ CONTRERAS, also known as Manuel Domingo De La Cruz Contreras, resided in Maryland, and is the cousin of ULISES CONTRERAS and KARIN CONTRERAS.

6.     Individual Two, who is currently incarcerated in New York for unrelated crimes, resided in Washington, D.C. Individual Two was in a romantic relationship with KARIN CONTRERAS.

7.     At various times, ULISES CONTRERAS, MANUEL DE LA CRUZ CONTRERAS, and INDIVIDUAL TWO lived at or stayed at KARIN CONTRERAS' residence.

8.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES ACT") was signed into law. The CARES Act created the Pandemic Unemployment Assistance ("PUA") program, which provided unemployment benefits to individuals not eligible for regular unemployment compensation or extended unemployment benefits.

9.     The CARES Act also provided for an emergency increase in unemployment compensation benefits, referred to as Federal Pandemic Unemployment Compensation ("FPUC"). The President authorized the FEMA Administrator to provide grants to participating states, territories, and the District of Columbia to administer delivery of lost wages assistance ("LWA") to those receiving unemployment insurance.

10.     The PUA and FPUC programs ended in September 2021.

11.     The PUA, FPUC, and LWA programs were administered by various State Workforce Agencies, but those programs' benefits were funded by the federal government, with program administration and oversight by the U.S. Department of Labor and/or the U.S. Department of Homeland Security. The State of Maryland managed its unemployment insurance ("UI") compensation program through the Maryland Department of Labor ("MD DOL").

12. An individual applying for Maryland UI benefits online had to submit several categories of personal identifying information ("PII"). Claimants also certified that they had their hours reduced by their employer or had been separated from employment altogether, including during operation of the PUA program, due to business closures or other reasons related to COVID-19.

13. Applicants could choose whether to have the MD DOL deposit their unemployment benefits directly into a linked bank account specified by the claimant or loaded onto a prepaid debit card provided by Bank of America, which was shipped to the applicant via the United States Postal Service to the physical address listed on the application. Prepaid cards were automatically reloaded with newly dispersed funds via electric transfers using the internet.

14. Bank of America operated Automatic Teller Machines ("ATMs") nationwide, including in the District of Columbia.

## THE WIRE FRAUD SCHEME

15. Beginning no later than June 2020, and continuing through in or about March 2021, KARIN CONTRERAS conspired with others, including ULISES CONTRERAS and Individual Two, to defraud the COVID-19 era unemployment programs administered by the state of Maryland by fraudulently obtaining UI benefits and withdrawing cash from ATM machines using pre-paid ATM cards.

### Fraudulent Submission of Unemployment Applications

16. At the start of the COVID-19 pandemic, KARIN CONTRERAS, ULISES CONTRERAS, and Individual Two applied for UI for themselves and obtained pre-paid debit cards loaded with benefits.

17. KARIN CONTRERAS then conspired with others, including ULISES CONTRERAS, MANUEL DE LA CRUZ CONTRERAS, and Individual Two, to obtain UI benefits in other people's names.

18. ULISES CONTRERAS was responsible for submitting applications for UI benefits online. He submitted applications using stolen identities and identities of people who conspirators were aware did not qualify for UI benefits.

19. ULISES CONTRERAS submitted these applications in other people's names using PII that he personally obtained, that KARIN CONTRERAS provided him, that MANUEL DE LA CRUZ CONTRERAS provided him, that Individual Two provided him, and that other conspirators provided him.

### Receipt of Pre-Paid Debit Cards

20. KARIN CONTRERAS understands based on information provided in discovery that the fraudulent applications caused conspirators to receive pre-paid ATM cards loaded with benefits totaling over $1 million and that the overwhelming majority of these cards were mailed to the address immediately next to where KARIN CONTRERAS resided with ULISES CONTRERAS and Individual Two.

### Use of Debit Cards at ATMs

21. ULISES CONTRERAS, KARIN CONTRERAS, MANUEL DE LA CRUZ CONTRERAS, ESDRA CASTILLO, Individual Two, and other conspirators all withdrew funds from the pre-paid debit cards at ATMs, typically in increments of $1,000, the maximum daily withdrawal limit on the cards.

22. Specifically, as it relates to KARIN CONTRERAS, she was captured on Bank of America surveillance using 12 different fraudulently obtained pre-paid debit cards to withdraw a total of $23,000 from ATMs in Washington, D.C., between July 1, 2020, and July 14, 2020. This

included using an ATM card in the name of C.Y. to withdraw $1,000 on July 7, 2020, and then again on July 14, 2020.

23.     C.Y. did not know C.Y.'s identity was being used to apply for Maryland UI benefits or that a debit card was issued in C.Y.'s name.

24.     Each Bank of America ATM withdrawal in Washington, D.C., caused a wire transmission from Washington, D.C. to Bank of America servers located outside Washington, D.C.

25.     KARIN CONTRERAS understands based on information provided in discovery that conspirators were able to realize approximately $551,000 of the over $1 million loaded onto the cards.

26.     The proceeds KARIN CONTRERAS obtained from the scheme have been dissipated and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

27.     KARIN CONTRERAS has no information, evidence, or knowledge that her co-defendants in this case—Ulises Contreras, Esdra Castillo, and Manuel de la Cruz Contreras—were not involved in the offenses with which they have been individually charged in the indictment.

Respectfully submitted,

JEANINE F. PIRRO
UNITED STATES ATTORNEY

By: _____

Kondi J. Kleinman, Cal. Bar No. 241277
Assistant United States Attorney
Fraud, Public Corruption & Civil Rights Section
601 D Street, N.W. | Washington, D.C. 20530
(202) 252-6887 | kondi.kleinman2@usdoj.gov

John Kosmidis, NY Bar. No. 4533840
Trial Attorney
Criminal Division, Fraud Section
1400 New York Ave., N.W. | Washington, D.C. 20005
john.kosmidis@usdoj.gov | (202) 641-3109

## DEFENDANT'S ACKNOWLEDGMENT

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding these offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I read every word of this Statement of Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: 7-10-26

KARIN L. CONTRERAS
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 7-10-26

HEATHER SHANER, Esq.
Counsel for Defendant KARIN L. CONTRERAS